## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANDREY MIKHASHOV,

        Plaintiff,

        v.

DEPARTMENT OF DEFENSE *et al.*,

        Defendants.

Civil Action No. 22-3485 (BAH)

Judge Beryl A. Howell

### MEMORANDUM OPINION

Plaintiff Andrey Mikhashov, a soldier in the U.S. Army, filed a four-count complaint against defendants U.S. Department of Defense ("DoD"), the Defense Counterintelligence and Security Agency ("DCSA"), and U.S. Department of the Army ("Army"), challenging, in Counts I and II, defendants' responses to two requests seeking records regarding an "investigation" into a "possible security violation" by plaintiff, Compl. ¶¶ 3, 18, 39, ECF No. 1, and the possible "suspension" or "revocation" of plaintiff's "security clearance for classified information," pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *see* Compl. ¶¶ 42–54; *id.*, Ex. A, FOIA Request to Ft. Huachuca ("Ft. Huachuca FOIA Request") at 2, ECF No. 1-1 (capitalization omitted); *id.*, Ex. C, FOIA Request to Army Intelligence and Security Command ("INSCOM") ("INSCOM FOIA Request") at 10, ECF No. 1-1 (capitalization omitted).  In addition, plaintiff claims, in Counts III and IV, alleged "unequal enforcement of SEAD 4," which plaintiff describes as a "directive issued by the executive branch guiding the issuance of security clearance," Compl. ¶ 56 (capitalization omitted), and that unnamed "John Does 1–10 and the federal government" violated plaintiff's "constitutional rights," "denied [] Plaintiff due process," "committed the unequal application of SEAD 4," carried

out "other violations of applicable laws, regulation, and/or policies," and "otherwise acted in a manner that harmed" plaintiff, *id.* ¶ 64.

Defendants have moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on Counts I and II, brought under the Privacy Act and FOIA, respectively, and to dismiss, pursuant to Rules 12(b)(1), (b)(2), and (b)(6), Counts III and IV.  *See* Defs.' Partial Mot. Dismiss & Partial Mot. Summ. J. ("Defs.' Mot."), ECF No. 19; Defs.' Mem. Supp. Partial Mot. Dismiss & Partial Mot. Summ. J. ("Defs.' Mem."), ECF No. 19-1; Defs.' Opp'n Pl.'s Cross-Mot. Summ. J. & Reply Supp. Defs.' Partial Mot. Dismiss & Partial Mot. Summ. J. ("Defs.' Reply") at 5, ECF No. 24.[1]  Plaintiff, in turn, has cross-moved for partial summary judgment on Counts I and II.  *See* Pl.'s Mem. Supp. Partial Cross-Mot. Summ. J. & Opp'n Defs.' Partial Mot. Dismiss & Partial Mot. Summ. J. ("Pl.'s Mem."), ECF No. 21; Pl.'s Cross-Mot. Summ. J., ECF No. 22.

For the reasons set forth below, defendants' motion is granted and plaintiff's cross motion is denied.

## I.      BACKGROUND

The background underlying plaintiff's FOIA and Privacy Act requests is described below, followed by a review of plaintiff's requests and defendants' responses.

### A.      Factual Background

From what may be gleaned from the complaint and the exhibits attached thereto, as of the filing date of the Complaint, plaintiff was a North Carolina resident and U.S. Army soldier assigned to the 501st, 524th, and 525th Military Intelligence Brigades.  *See* Compl. ¶¶ 2, 33; *id.*, Ex. L, at 41, ECF No. 1-1 (plaintiff's email describing himself as "a Soldier in the 501st MI

---

[1]      Defendants' Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Defendants' Partial Motion to Dismiss and Partial Motion for Summary Judgment, and accompanying exhibits, are docketed twice at ECF Nos. 24 and 25.  To simplify citation, only the former of the duplicate memoranda is cited.

BDE/524th MI BN").[2]   The complaint alleges that plaintiff sought "disclosure and release of agency records" held by Army components Ft. Huachuca, Arizona, and INSCOM, Compl. ¶¶ 1, 3, 5, 10, which records plaintiff contends "may be used to suspend or revoke his [security] clearance," Pl.'s Mem. at 1.[3]

According to records attached to plaintiff's Complaint, plaintiff was apparently observed at Fort Huachuca, Arizona, using Google Translate to "assist him with classified reports."  Compl., Ex. I, Apr. 28, 2022 Suppl. Inf. Request ("SIR") at 33, ECF No. 1-1 (capitalization omitted); *see also id.*, Ex. R, May 18, 2021 Mem. at 74–75, ECF No. 1-1.  As summarized in a memorandum, dated June 3, 2021, Army Counterintelligence Command ("ACI") "opened/terminated an investigation" of plaintiff, concluding that although "several witnesses [] reconfirmed [plaintiff] used translation software on his computer to assist him with classified reports," the "case [did] not meet the threshold to open a full field investigation."  *Id.*, Ex. S, June 3, 2021 ACI Mem. at 79–80, ECF No. 1-1; *see also id.* ¶¶ 38–39.

Nevertheless, ACI referred the matter to DoD's Consolidated Adjudications Facility ("CAF"), now the DCSA Consolidated Adjudication Services ("CAS"), "for any action deemed

---

[2]      Page numbers cited for the exhibits attached to plaintiff's Complaint, ECF No. 1-1, and plaintiff's Memorandum in Support of his Opposition to Defendants' Partial Motion to Dismiss and Partial Motion for Summary Judgment and Partial Cross-Motion for Summary Judgment, ECF No. 21-2, are those applied by the Court's Case Management/Electronic Case Files ("CM/ECF") system, since document page numbers have not been provided in these submissions.  Text in certain exhibits is so garbled as to make discernment of meaning both challenging and inconvenient.  *See, e.g.*, Compl., Ex. C, at 9, ECF No. 1-1 (June 29, 2022 email from plaintiff's counsel reading as: "Plea e ee the reque t we ent to your old inbo Plea e confirm receipt at your earlie t convenience").

[3]      The subject line of plaintiff's record requests to Ft. Huachuca and INSCOM reads: "suspension of security clearance for classified information" and "revocation of security clearance for classified information," respectively, *see* Ft. Huachuca FOIA Request (capitalization omitted); INSCOM FOIA Request (capitalization omitted), suggesting that plaintiff's clearance may have been suspended or revoked at the time the requests were submitted.  Plaintiff's Complaint indicates, however, that no such suspension or revocation had occurred by the filing date of plaintiff's complaint, *see generally* Compl., thereby necessitating, according to plaintiff, the release of "records of any allegations used against him or any information relied upon that may be used to suspend or revoke his clearance," Pl.'s Mem. at 1.  According to DCSA's Deputy Assistant Director, a "stay on the CAS' administrative security clearance proceedings for [plaintiff]" went into effect on November 30, 2022, which stay "will not be removed until the conclusion of this litigation."  Defs.' Opp'n Pl.'s Mot. for Briefing Schedule, Ex. 2, Decl. of Tracy M. Thornton ¶ 4, ECF No. 11-3.

appropriate."  *Id.*, Ex. S, June 3, 2021 ACI Mem. at 79–80; *id.*, Ex. O, Sept. 26, 2022 SIR at 61, ECF No. 1-1 *see also id.* ¶ 40.  Concluding that the "disclosed information [] may have a bearing on [plaintiff's] eligibility for access to classified information," on plaintiff's "assignment to duties that have been designated national security sensitive," and/or on his "access to Sensitive Compartmented Information," *id.*, Ex. I at 33, DCSA issued three SIRs to plaintiff, in April, September, and October 2022, *id.* ¶¶ 18, 29, 34; *see also id.*, Ex. I at 33, Apr. 28, 2022 SIR at 33; *id.*, Ex. O, Sept. 26, 2022 SIR at 61; *id.*, Ex. Q, Oct. 24, 2022 SIR at 67, ECF No. 1-1.  Plaintiff contends he was prompted to "provide a sworn statement . . . without being read his [Uniform Code of Military Justice ('UCMJ')] Article 31(b) rights"—the "civilian equivalent to Miranda rights," Compl. ¶¶ 19, 21, 29–30—and apparently provided a sworn statement to the first request, and contends he "need[s]" the records requested pursuant to FOIA and the Privacy Act "in order to properly and thoroughly respond to" the outstanding SIRs, Pl.'s Mem. at 1; *see* Compl. ¶ 31 (as to September 26, 2022 request, plaintiff asserting he "did not respond to the questions because the document was actually intended to be a request to Plaintiff's command to answer" (emphasis omitted)); *id.* ¶¶ 34–36 (as to October 24, 2022 request, plaintiff asserting "DCSA CAS issued a third Supplemental Information Request" with no mention of a response by plaintiff).  Plaintiff's Battalion Commander acknowledged, in response to plaintiff's complaint alleging violation of his Article 31(b) rights in connection with the first SIR, that plaintiff "should have been read his Article 31(b) rights before issuing him the questions to answer," Compl. ¶ 23, but that the individual "who obtained the 20 May 2022 statement did so without a deliberate intention to act outside the requirements of Article 31(b)," *id.*, Ex. K, Mem. Resp. to Initial Request for Redress at 38, ECF No. 1-1.  The Commander "confirm[ed]" that the statement had not been and was not intended to be "transmitted . . . to DOD CAF," and invited plaintiff "to provide a statement in

4

response to the DOD CAF inquiry after he is advised of his Article 31(b) rights." *Id.*, Ex. K, Mem. Resp. to Initial Request for Redress at 38.

Unsatisfied with the response to his complaints about the first SIR, plaintiff submitted, on June 25, 2022, a formal complaint under UCMJ Article 138, alleging violation of his Article 31(b) rights.  *Id.*, Ex. L, June 25, 2022 Art. 138 Compl. at 41–43, ECF No. 1-1; *see also* UCMJ art. 138 (providing that "[a]ny member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer").  This Article 138 complaint allegedly remained unanswered as of the filing date of plaintiff's Complaint.  *See* Compl. ¶ 27.[4]

Roughly one month after receiving the second SIR, and after plaintiff's command purportedly "said they supported the closure of the security clearance concerns in favor of the Plaintiff" but failed to "submit any paperwork to that effect," Compl. ¶ 32, plaintiff submitted, on October 25, 2022, "a second Article 138 complaint . . . through his new command, the 525 Military Intelligence Brigade," *id.* ¶ 33; *see also id.*, Ex. P, Oct. 25, 2022 Art. 138 Compl., at 64, ECF No. 1-1.

### B.     Plaintiff's Two FOIA Requests

Concerned by the Army's investigation into his continuing eligibility for a security clearance, and by his apparently unresolved UCMJ complaints, plaintiff submitted, in June 2022, the two record requests at issue in this lawsuit—one request to INSCOM and one request to Ft. Huachuca, the Army installation where plaintiff allegedly committed the security violation.  *See*

---

[4]     Following the filing of plaintiff's complaint, INSCOM denied as "deficient" his first Article 138 complaint requests.  Defs.' Opp'n Pl.'s Mot. for Briefing Schedule, Ex. 3, April 3, 2023 INSCOM Resp. Regarding Pl.'s Article 138 Complaint, ECF No. 11-4.

Compl. ¶¶ 5, 10; Defs.' Mot., Att. 2, Defs.' Statement of Material Facts Not in Genuine Dispute ("Defs.' SMF") ¶¶ 1, 3, ECF No. 19-2.[5]  Each request is discussed in turn.

### 1.    INSCOM Request

On June 22, 2022, plaintiff submitted a FOIA request to INSCOM, seeking records relating to the "revocation of [plaintiff's] security clearance for classified information" and requesting "expedited processing."   INSCOM FOIA Request at 10–12 (capitalization omitted); *see also* Defs.' SMF ¶ 1.  Specifically, plaintiff made requests for four categories of records: (1) "[a]ll emails from 2019 to the present referencing" seven specified search terms relating to plaintiff or plaintiff's command, the 501st Military Intelligence Brigade, as contained within the emails of sixteen listed "Soldiers[] and Staff sections[]" with plaintiff's command; (2) "[a]ll interagency and intra-agency records related to" plaintiff; (3) "[a]ll investigation and standard forms pertaining to the above," which, if construed to refer to the prior categories of requested records, relate to plaintiff; and (4) "[a]ll records held by INSCOM and their subordinate units including, but not limited to, Any Counterintelligence."  INSCOM FOIA Request at 10–11 (capitalization omitted). Notably, while the first three categories of requested records made clear the records sought were those pertaining to plaintiff, the last paragraph was not similarly focused and, on its face, broadly sought "[a]ll records held by INSCOM . . . ."  *Id.*

INSCOM received plaintiff's request on June 29, 2022, the same day plaintiff sent his request "to INSCOM's new email address," Compl. ¶ 10; *see* Defs.' Mot., Att. 5, Decl. of Michael T. Heaton, Director of INSCOM's FOIA & Privacy Act Office ("Heaton Decl.") ¶¶ 1, 3, ECF No. 19-5, and roughly one week later, on July 6, 2022, denied plaintiff's request for expedited

---

[5]        Defendants' Statement of Material Facts, as well as declarations by INSCOM's FOIA and Privacy Act Office Director, and by Ft. Huachuca's Administrative Services Division Chief and FOIA Officer, are undisputed unless otherwise noted.  *See* Defs.' SMF; Defs.' Mot., Att. 5, Decl. of Michael T. Heaton ("Heaton Decl."), ECF No. 19-5; Defs.' Mot., Att. 4, Decl. of Nancy H. Williams ("Williams Decl."), ECF No. 19-4.

processing and began to coordinate the search for responsive records, *see* Heaton Decl. ¶¶ 5–6. With plaintiff's counsel's consent, INSCOM excluded from its search for records responsive to plaintiff's first requested category, "emails 'where soldier X was tasked with an action unrelated to SGT Mikhashov, or where SGT Mikhashov was CC'd on a product review,'" in order to "expedite the processing of the . . . records," Pl.'s Mem., Ex. H at 102–04, ECF No. 21-2. This narrowing of the search parameters was understood by INSCOM's FOIA and Privacy Act Director Michael Heaton to reflect plaintiff's consent to limit the search to "only those emails related to [plaintiff's] security clearance related concerns." Heaton Decl. ¶ 10.

The search returned 85 responsive pages, Heaton Decl. ¶ 15, and productions to plaintiff were made in several tranches. On September 22, November 2 and 8, 2022, INSCOM "partially releas[ed] a total of 69 pages," withholding certain information from release, pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E), and Privacy Act Exemption (k)(2), with the remaining 16 pages referred to the Army Crimes Records Center ("CRC") "for review and direct reply to" plaintiff. Heaton Decl. ¶¶ 7, 11–15, 22–24. Plaintiff does not dispute, *see* Pl.'s Mem. at 23, that "[f]or each release [] Plaintiff was provided the requisite appeal rights" but "ha[d] not submitted an appeal to any of the INSCOM releases" by the date plaintiff filed his complaint, on November 14, 2022, nor by the filing date of the Heaton Declaration, on October 18, 2023, *see* Heaton Decl. ¶ 15.

### 2. Ft. Huachuca Request

One week after submitting the FOIA request to INSCOM, plaintiff submitted a second FOIA request to Fort Huachuca, "a military installation under the command and control" of the Army, Compl. ¶ 5, again requesting "expedited processing" and seeking the following five categories of records "pertaining to [plaintiff]," under the subject heading of "Suspension of Security Clearance for Classified Information": (1) "interagency and intra-agency correspondence

pertaining to the above"; (2) "interagency and intra-agency records related to" plaintiff; (3) "[a]ll investigation and standard forms pertaining to the above"; (4) "AR 15-6 Investigations and/or Commander's Inquiries, and/or any other administrative investigation regarding" plaintiff "maintained at Fort Huachuca, any training facility/unit/program, or any tenant unit from the same"; and (5) "Military Police or CID Investigations regarding" plaintiff "maintained at DES Law Enforcement Division, Fort Huachuca, Arizona," Ft. Huachuca FOIA Request at 2–3.  As this request made clear, all the records sought pertained to plaintiff, with the second and third categories of records the same as sought in the INSCOM FOIA Request.

One week later, on July 6, 2022, Ft. Huachuca "acknowledged receipt," "provided a formal letter" to plaintiff, and assigned a tracking number to the request.  Compl. ¶ 6; *id.*, Ex. B, Ft. Huachuca July 6, 2022 Resp. at 6, ECF No. 1-1.  Ft. Huachuca also denied plaintiff's request for expedited processing.  Defs.' Mot., Att. 4, Decl. of Nancy H. Williams, Admin. Servs. Division Chief & FOIA Officer ("Williams Decl.") ¶ 4, ECF No. 19-4.

Although ordinarily, as Fort Huachuca's Administrative Services Division Chief and FOIA Officer Nancy Williams acknowledges, "an interim letter would be sent within 20 workings days" of receipt of plaintiff's request "stating the case was categorized as 'Complex'" and "explain[ing] cases are worked [on a] 'first in and first out' basis," Williams Decl. ¶ 5, the record indicates no such interim letter was sent in response to plaintiff's request, timely or otherwise.  Ft. Huachuca only began to search for responsive records in mid-May 2023—roughly six months after plaintiff initiated this suit and roughly eleven months after Ft. Huachuca's initial acknowledgment letter. *Id.* ¶ 6.  Once the search was initiated, until June 30, 2023, Ft. Huachuca "coordinated with Plaintiff's unit of assignment . . . to request any records in their possession pertaining to [him],"

*id.*, searching "share drives, electronic mailing system, and hard copy records," for the search terms "Mikhashov," "Andrey Mikhashov," and "SGT Mikhashov," *id.* ¶ 13 (capitalization omitted).

On May 31, 2023, Ft. Huachuca made an initial release to plaintiff of 24 pages of records responsive to the fifth category in the request—*i.e.*, (5) "Military Police or CID Investigations regarding" plaintiff—with redactions applied, pursuant to FOIA Exemptions 5, 6, and 7(C). *See* Williams Decl. ¶ 7; Pl.'s Mem., Ex. B, May 31, 2023 Ft. Huachuca Resp. Ltr. at 4–5, ECF No. 21-2. The cover letter for this first release indicated that plaintiff's other requests for the first, second, and third categories of records—*i.e.*, (1) "interagency and intra-agency correspondence" relating to plaintiff's security clearance suspension, (2) "interagency and intra-agency records related to" plaintiff, and (3) "investigation and standard forms" relating to plaintiff's suspension—were referred to another office, the U.S. Army Training and Doctrine Command ("TRADOC"), for a final release determination. The fourth category of records—*i.e.*, (4) "AR 15-6 Investigations and/or Commander's Inquiries, and/or any other administrative investigation regarding" plaintiff—would be released to plaintiff by the Fort Huachuca Staff Judge Advocate. Pl.'s Mem., Ex. B, May 31, 2023 Ft. Huachuca Resp. Ltr. at 4–5.

In June and July 2023, TRADOC and the Ft. Huachuca Staff Judge Advocate made three separate releases of responsive records: on June 2 and July 6, TRADOC made two "partial release[s]" of an unknown number of pages responsive plaintiff's requests for all five categories of records, with redactions made to an unspecified number of pages, pursuant to FOIA Exemption 6, *see* Pl.'s Mem., Ex. C, June 2, 2023 TRADOC Release Ltr. at 7–8, ECF No. 21-2; *id.*, Ex. E, July 6, 2023 TRADOC Release Ltr., ECF No. 21-2; and on June 27, the Ft. Huachuca Staff Judge Advocate provided a release of records responsive to the fourth category, with certain records

withheld or redacted, also pursuant to FOIA Exemption 6, *see* Pl.'s Mem., Ex. D, June 27, 2023

Ft. Huachuca Off. of Staff Judge Advocate Release Ltr. at 10, ECF No. 21-2.[6]

From the four releases by Ft. Huachuca and referring components, information withheld

pursuant to Exemption 6 included "the names, email addresses, handwritten statements, titles of

junior military, DoD civilian personnel and statements from witnesses and topics of dismissal not

pertaining to [plaintiff]," Williams Decl. ¶ 16, as well as (1) "a handwritten DA Form 2823 . . .

withheld in its entirety"; (2) "DA Form 7279s pertaining to other individuals, not [plaintiff]"; and

(3) "handwritten pages, DA Form 2823s, and DA Form 3881 pertain[ing] to another individual,

who was not [plaintiff]," *id.*[7]

## C.   Procedural History

On November 14, 2022, plaintiff filed the instant suit seeking relief under the Privacy Act

and FOIA, as well as claims that defendants allegedly engaged in "unequal enforcement [against

plaintiff] of SEAD 4," an executive branch "directive . . . guiding the issuance of security

clearance," and that unnamed "John Does 1-10 and the federal government . . . violate[d] the

Plaintiff's constitutional rights; denied the Plaintiff due process; committed the unequal

---

[6]     Attached to defendants' Reply brief is a June 30, 2023 release letter from INSCOM, which appears to have been issued in response to plaintiff's Ft. Huachuca request, as indicated by the letter's response to items requested in the Ft. Huachuca request.  *See* Defs.' Reply, Att. 2, June 30, 2023 INSCOM Release Ltr. Reg. Ft. Huachuca Request, ECF No. 24-2.  This release is not cited in the Complaint or either party's Statement of Material Facts and thus appears not to be in issue in this litigation.

[7]     In addition, from the July 6, 2023 release, TRADOC withheld, pursuant to Exemption 6: (1) the "DoD Identification numbers of [the] academic rater and reviewing official" in DA Form 1059; (2) the "names of other soldiers on probation; full contact phone number, full name, signature, and position and title of individual signing the memo" in a March 18, 2021 "Memo For Record"; (3)  the "rank, full name, signature, and position title of [the] Plan's approver" in the "Individual Student Assessment Plan for Course 241-35M10 (POI V6.0)"; (4) the "rank, name, signature, and title of Counselors" in "DA Forms 4856"; (5) the "rank and name of instructors and other students (or cadre) and any text, such as gender, that could possibly identify which instructor or student is being referred to or provided the response" in "EoC_35M10_21-006"; and (6) the "rank, name, and signature of other students and instructors" in the October 2017 "DB Ruberic [sic]."  Williams Decl. ¶ 12 (capitalization omitted).  None of these withholdings appears to be challenged by plaintiff, *see* Pl.'s Mem. at 17 (acknowledging "[t]he stated reasons for attempting to use (b)(6) appear to at least be alleged to be appropriate under the TRADOC release from July 6, 2023" (citing Williams Decl. ¶ 12)), and thus are not at issue in this litigation.

application of SEAD 4 and other violations of applicable laws, regulations, and/or policies; and

otherwise acted in a manner that harmed the Plaintiff."  Compl. ¶¶ 42–65 (capitalization omitted).

Soon thereafter, a scheduling order was entered in accord with the parties' proposal.  *See*

Scheduling Order (Mar. 30, 2023).  This schedule was amended and ultimately vacated, in

response to the parties' requests, *see* Min. Orders (May 19, 2023, June 2, 2023, June 14, 2023,

July 5, 2023), to "allow the Defendants time to produce and process the responsive documents"

newly located by Ft. Huachuca, to permit "Plaintiff to review them, and for the parties to . . . decide

whether the FOIA issues in this case can be resolved" short of motions practice, Consent Mot. to

Vacate Summ. J. Briefing Schedule ¶¶ 3–4, ECF No. 16.  A new scheduling order was entered, at

the parties' joint request, in September 2023.  *See* Jt. Status Rep. at 1–2, ECF No. 18; Scheduling

Order (Sept. 22, 2023).

## II.    LEGAL STANDARD

### A.    FOIA  and the Privacy Act

"The fundamental principle animating FOIA is public access to government documents."

*Waterman v. Internal Revenue Serv*., 61 F.4th 152, 156 (D.C. Cir. 2023) (citation omitted).

Agencies are accordingly statutorily mandated to "make . . . records promptly available to any

person" who submits a request that "reasonably describes such records" and "is made in

accordance with [the agency's] published rules."  5 U.S.C. § 552(a)(3)(A).  "Congress, however,

did not 'pursue transparency at all costs'[;] [r]ather, it recognized that 'legitimate governmental

and private interests could be harmed by release of certain types of information.'"  *Citizens for*

*Resp. & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW II*"), 45 F.4th 963, 967 (D.C. Cir. 2022)

(citations omitted).  To balance those competing interests, "FOIA exempts nine categories of

documents from 'the government's otherwise broad duty of disclosure.'"  *Waterman*, 61 F.4th at

156 (citation omitted).  "[T]hese limited exemptions do not obscure the basic policy that

disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

FOIA authorizes federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). When an agency invokes an exemption to disclosure, "the FOIA directs district courts to determine *de novo* whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) (citing U.*S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 755 & n.6 (1989)). The statute "places the burden 'on the agency to sustain its action' . . . and the agency therefore bears the burden of proving that it has not 'improperly' withheld the requested records." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW I*"), 922 F.3d 480, 487 (D.C. Cir. 2019) (first quoting 5 U.S.C. § 552(a)(4)(B); and then quoting *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)).

The Privacy Act regulates the collection, maintenance, use, and dissemination of an individual's personal information by federal government agencies. *See* 5 U.S.C. § 552a(e). This statute also provides an individual the right to access agency records that is separate from FOIA. Specifically, an agency is required to provide an individual, upon request, with "access to his record or to any information pertaining to him which is contained in the system." *Id.* § 552a(d)(1); *see also Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 142 (2011). This "provision 'give[s] parties access only to their own records, not to all information pertaining to them that happens to be contained in a system of records.'" *Whitaker v. U.S. Dep't of State*, No. 14-5275, 2016 WL 9582720, at *2 (D.C. Cir. Jan. 21, 2016) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1121 (D.C. Cir. 2007)).

## B.      Federal Rules of Civil Procedure (b)(1) and (b)(6)

"[F]ederal courts are courts of limited jurisdiction," *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (citation omitted), "possessing only that power authorized by Constitution and statute," *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citation omitted).   Federal courts therefore have a corresponding "independent obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press."   *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (citation omitted).   Absent subject-matter jurisdiction, a case must be dismissed. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006); *see also* FED. R. CIV. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court "assume[s] that the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d 1274, 1278 (D.C. Cir. 2016) (citation omitted), and must "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).   In addition, to assure itself of its jurisdiction over a claim, "a court may consider materials outside the pleadings[.]"   *Jibril v. Mayorkas*, 101 F.4th 857, 866 (D.C. Cir. 2024) (brackets omitted) (quoting *Kareem*, 986 F.3d at 866 n.7).

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).   A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct."   FED. R. CIV. P. 8(a)(2), (d)(1).   Plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original accepted and citation omitted).

In deciding a motion under Rule 12(b)(6), a court must consider the whole complaint, accepting all factual allegations in the complaint as true, "even if doubtful in fact," and construing all reasonable inferences in the plaintiff's favor.  *Twombly*, 550 U.S. at 555 (citations omitted).  In determining whether a complaint fails to state a claim, a court may consider only the facts alleged in the complaint and "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice."  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020) (alterations in original accepted and citation omitted).

### C.   Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law."  *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (citation omitted); *see also* FED. R. CIV. P. 56(a).  In FOIA cases, "courts must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with 'reasonably specific detail'; and (2) is not substantially called into question by contrary record evidence or evidence of agency bad faith."  *Schaerr v. Dep't of Justice*, 69 F.4th 924, 929 (D.C. Cir. 2023) (citations omitted); *see also Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (explaining that in FOIA cases, summary judgment may be granted based on agency affidavits "if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith" (citation omitted)).  Agency declarations are afforded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).  Most FOIA cases "can

be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.   DISCUSSION

Plaintiff challenges, under the Privacy Act and FOIA, defendants' handling of specific aspects of his INSCOM and Ft. Huachuca FOIA Requests. *See* Compl. ¶¶ 42–54 (Counts I and II alleging violation of the Privacy Act and FOIA, respectively). As to the INSCOM FOIA Request, plaintiff challenges INSCOM's response to only the first of the four requested categories of records that asked for emails referencing specified search terms relating to plaintiff or the command to which plaintiff was then assigned. *See* INSCOM FOIA Request at 10–11. In plaintiff's view, the response was inadequate because INSCOM "under-produc[ed] several responsive records," Pl.'s Reply Supp. Cross-Mot. Summ. J. ("Pl.'s Reply") at 6, ECF No. 27, which seems to challenge the withholding of information, but is also confusingly described by plaintiff as objecting to the scope of the search for responsive records, *see id.* (asserting "[p]laintiff's issues with INSCOM revolve around the adequacy of their search").[8] As to the Ft. Huachuca FOIA Request, plaintiff contends that defendants "failed to address or cite to any Privacy Act exemptions," Pl.'s Reply at 4, and, in two releases, "improperly assert[ed] and overuse[d] FOIA exemption (b)(6)," Pl.'s Mem. at 11.[9]

Defendants respond, as to the Privacy Act claim in Count I, that "not every record is subject to the Privacy Act," Defs.' Reply at 5, and as to plaintiff's FOIA claim against INSCOM, that plaintiff cites only "[m]ere speculation that as yet uncovered documents may exist," which "does

---

[8]   To the extent plaintiff invoked the Privacy Act for access to records in the INSCOM FOIA Request, his briefing raises no objection under that statute to the responses he received from INSCOM. *See* Pl.'s Reply at 8. Thus, his Privacy Act claim in Count I is understood to relate solely to the Ft. Huachuca FOIA Request.

[9]   Based on these alleged deficiencies, plaintiff further asserts that defendants "acted in bad faith," warranting *in camera* review of the Ft. Huachuca records, the "denial of summary judgment against plaintiff as a remedy for INSCOM's bad faith," and the grant of plaintiff's cross motion as to both Counts I and II. Pl.'s Reply at 5. Plaintiff's request for *in camera* review of the Ft. Huachuca records is denied for reasons discussed, *infra*, in Part III.B.3, n.18.

not undermine the finding that the agency conducted a reasonable search for them," *id.* at 4 (alteration in original) (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1201) (other citation omitted). Absent from defendants' briefing is any challenge to plaintiff's failure to raise administratively his concerns about the adequacy of the responses to his record requests.  Nonetheless, administrative exhaustion poses both possibly jurisdictional and certainly jurisprudential questions about the availability of judicial review as to plaintiff's claims in Counts I and II.  This issue is, thus, considered first before turning to defendants' motion for partial summary judgment on those record requests claims, and dismissal of plaintiff's claims in Counts III and IV.

### A.    Plaintiff's Privacy Act Claim (Count I) and FOIA Claim as to INSCOM (Count II) Fail Under the Administrative Exhaustion Doctrine

As noted, defendants do not address in their briefing the threshold issue of administrative exhaustion, which they affirmatively raised in their Answer.  *See* Defs.' Answer at 9, ECF No. 8 (asserting as third defense that "Plaintiff has failed to exhaust available and necessary administrative remedies before filing this suit").  This issue is dispositive of plaintiff's Privacy Act and INSCOM FOIA request claims here.

#### 1.    Administrative Exhaustion Under FOIA and the Privacy Act

"The doctrine of administrative exhaustion applies to FOIA and limits the availability of judicial review." *Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1238 (D.C. Cir. 2018) (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).  "Although exhaustion of a FOIA request is not jurisdictional," this "jurisprudential doctrine . . . precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Id*. (quotation marks omitted) (quoting *Wilbur v. C.I.A.*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam)).  "Exhaustion is required so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision."

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 372 (D.C. Cir. 2020) (quotation marks and citation omitted).  This is a valuable opportunity for a plaintiff dissatisfied with an agency action to seek correction and avoid the need for litigation and judicial intervention.

FOIA requires exhaustion of administrative remedies by a plaintiff dissatisfied with a federal agency's response to a specific records request in two circumstances.  *First*, when an agency timely "notif[ies] a requester of its 'determination and the reasons therefor' within 20 business days of receiving the request," *Khine v. U.S. Dep't of Homeland Sec.*, 943 F.3d 959, 964 (D.C. Cir. 2019) (quoting 5 U.S.C. § 552(a)(6)(A)(i))—or within 30 days in "unusual circumstances," 5 U.S.C. § 552(a)(6)(B)(i)—a requester dissatisfied with the agency's determination "is required to administratively appeal that 'determination' before bringing suit," *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013) (Kavanaugh, J.); *see also Oglesby*, 920 F.2d at 65 ("[F]oregoing an administrative appeal will preclude the [FOIA] requester from ever bringing suit on that request because the individual will not have exhausted his administrative remedies[.]" (citation omitted)).  Notably, "if the agency responds to the request after the twenty-day statutory window, but before the requester files suit . . . the administrative exhaustion requirement still applies."  *Khine*, 943 F.3d at 966 (quotation marks omitted) (quoting *Jud. Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003)); *see also Gunter v. U.S. Secret Serv.*, No. 19-cv-353 (TFH), 2020 WL 570010, at *2 (D.D.C. Feb. 5, 2020) (finding "federal lawsuit is premature" since "Plaintiff was required to exhaust his administrative remedies before seeking federal judicial review, notwithstanding whether the Secret Service initially failed to comply with FOIA's statutory deadline," where agency responded "*before* Plaintiff filed this lawsuit" (emphasis in original) (citation omitted)); *Flaherty v. President of U.S.*, 796 F. Supp. 2d 201, 208–09 (D.D.C. 2011) (noting that the "right to judicial review based

on constructive exhaustion ends . . . if an agency responds at any time before the requester files suit" (citations omitted)), *aff'd sub nom. Flaherty v. I.R.S.*, 468 Fed. App'x 8 (D.C. Cir. 2012).

*Second*, when an agency fails to respond to a request in a timely fashion and before the requester files suit, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request," 5 U.S.C. § 552(a)(6)(C)(i), and may immediately seek judicial review in federal district court.  Such "constructive exhaustion" is "a special provision virtually unique to FOIA."  *Spannaus v. U.S. Dep't of Just.*, 824 F.2d 52, 58 (D.C. Cir. 1987), *overruled on other grounds by Jackson v. Modly*, 949 F.3d 763 (D.C. Cir. 2020); *see also Rossotti*, 326 F.3d at 1310 (recognizing that "[a] requester is considered to have constructively exhausted administrative remedies and may seek judicial review immediately if . . . the agency fails to answer the request within twenty days" (citing 5 U.S.C. § 552(a)(6)(c)).

A FOIA requester's "failure to exhaust administrative remedies" warrants dismissal of a claim, under Federal Rule of Civil Procedure 12(b)(6), for "failure to state a claim upon which relief can be granted."  *Hidalgo v. FBI*, 344 F.3d 1256, 1260 (D.C. Cir. 2003); *see also Mitchell v. Samuels*, 160 F. Supp. 3d 8, 11 n.4 (D.D.C. 2016) (recognizing the same); *Saldana v. Fed. Bureau of Prisons*, 715 F. Supp. 2d 10, 18 (D.D.C. 2010) (recognizing the same).

Likewise, the law is well-settled that a plaintiff alleging a violation of the Privacy Act's access-to-records provision, under 5 U.S.C. § 552a(d)(1), is required to exhaust administrative remedies prior to filing a civil action.  *See Marinkovic v. U.S. Dep't of Educ.*, No. 21-5244, 2022 WL 1694772, at *1 (D.C. Cir. May 26, 2022) (per curiam) (finding no error in district court's conclusion that claim "alleg[ing] that appellees had failed to provide him with access to certain records in violation of the Privacy Act, 5 U.S.C. § 522a(d)(1), was barred for failure to exhaust administrative remedies" (citing *Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990))); *see also*

*Rossmann v. Soc. Sec. Admin.*, No. 20-5296, 2021 WL 11560777, at *1 (D.C. Cir. Feb. 10, 2021) (per curiam) (holding the "district court correctly concluded that appellant failed to exhaust administrative remedies as required by the Privacy Act . . . as he did not administratively appeal the decision of the Social Security Administration . . . regarding his request for records" (citing 5 U.S.C. § 552a(d)(1), (g)(1)(B)) (other citations omitted)); *Dickson v. Off. of Pers. Mgmt.*, 828 F.2d 32, 41 (D.C. Cir. 1987) (affirming "district court's determination that appellant failed to exhaust administrative remedies, and therefore was barred from seeking injunctive relief"). Thus, in contrast to the constructive exhaustion available under the FOIA, the Privacy Act "provides no exemption from administrative review when an agency fails, even by several months, to abide by a deadline[.]" *Dickson*, 828 F.2d at 40 (citation omitted).

### 2.    Discussion

Plaintiff asserts that he "has exhausted all required and available administrative remedies." Compl. ¶¶ 46, 51; *see also* Pl.'s Mem. at 5–11, 23. As noted, defendants inexplicably fail to respond to this argument in their briefing, *see generally* Defs.' Mem.; Defs.' Reply, despite asserting an administrative exhaustion defense in their Answer, *see* Defs.' Answer at 9. This suffices to preserve the argument for purposes of dismissal for failure to state a claim. *See* FED. R. CIV. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . in any pleading allowed or ordered under Rule 7(a)."); FED. R. CIV. P. 7(a)(2) (identifying "an answer to a complaint" as among the "pleadings [that] are allowed").

The Privacy Act's right-of-access to records "incorporate[s] exhaustion requirements," such that "a plaintiff, according to the statutory language, must initially seek . . . access from the agency and even seek review within the agency before coming to court. " *Haase*, 893 F.2d at 373 (citing 5 U.S.C. §§ 552a(g)(1)(A), (B); 552a(d)(1), (3)); *Rossmann*, 2021 WL 11560777, at *1;

*Gardner v. United States*, No. 99-5089, 1999 WL 728359, at *1 (D.C. Cir. Aug. 4, 1999) (noting

that plaintiff in Privacy Act suit "failed to exhaust his administrative remedies, a prerequisite to

filing a complaint in district court" (citing *Dickson*, 828 F.2d at 40)).[10]   Citing "the compromise

reached by Congress" reflected in the statutory requirements of the Privacy Act, the D.C. Circuit

has explained that "[i]t is not within the province of the court to upset this delicate balance through

premature review" and, thus, "[t]o hear appellant's claim, we would invade the obligation to make

policy judgments committed in the first instance to the record keeping agency."  *Dickson*, 828 F.2d

at 40 (citation omitted).

Likewise, as to FOIA, although "[f]ailure to exhaust is not jurisdictional under FOIA,"

*Khine*, 943 F.3d at 964, "non-exhaustion may be raised *sua sponte* by a reviewing court . . . even

when it has no bearing on jurisdiction," *Dettmann v. U.S. Dep't of Just.*, 802 F.2d 1472, 1476 n.8

(D.C. Cir. 1986) (citations omitted), and courts have addressed a FOIA requester's non-exhaustion

of administrative remedies *sua sponte*, *see Dettmann*, 802 F.2d at 1476–77 & n.8 (holding

plaintiff's claim regarding "the FBI's handling of 'see' reference documents" are barred from

review since plaintiff "made no attempt to present for administrative review any objections," and

---

[10]        Whether the exhaustion requirement under the Privacy Act "is jurisdictional," *Sandoval v. U.S. Dep't of Just.*,
296 F. Supp. 3d 1, 13 (D.D.C. 2017) (citations omitted), has not been made express by the D.C. Circuit, *see Pretzman
v. Mayorkas*, No. 23-cv-2577 (TJK), 2024 WL 3887384, at *6 n.6 (D.D.C. Aug. 20, 2024) (noting "disagreement
among courts in this jurisdiction as to whether the Privacy Act's exhaustion requirement is jurisdictional, but the D.C.
Circuit has never held that it is, and the better view appears to be that it is not" (citing *Bain v. Off. of Att'y Gen.*, 648
F. Supp. 3d 19, 41–42 (D.D.C. 2022)); *see also Williams v. Pretrial Servs. Agency*, No. 23-cv-1859 (RDM), 2024 WL
4103708, at *4 (D.D.C. Sept. 6, 2024) (observing "[a]dministrative exhaustion is also required under the Privacy Act
. . . at least raising the question whether that requirement is also jurisdictional" (citing 5 U.S.C. § 552a(d)(1)–(3),
(g)(1)) (other citation omitted)).  Nevertheless, Privacy Act exhaustion has frequently been treated as a jurisdictional
issue on this Court. *See, e.g.*, *Page v. Comey*, 628 F. Supp. 3d 103, 136 (D.D.C. 2022), *motion for relief from judgment
denied*, No. 20-cv-3460 (DLF), 2023 WL 244350 (D.D.C. Jan. 18, 2023) (citing *Barouch v. U.S. Dep't of Just.*, 962
F. Supp. 2d 30, 67 (D.D.C. 2013)).  "Other Circuits have held that failure to exhaust administrative remedies is a
jurisdictional bar to *amendment* suits under 5 U.S.C. § 552(g)(1)(A), and only a jurisprudential consideration in *access*
suits under 5 U.S.C. § 552(g)(1)(B)."  *Lopez v. Nat'l Archives & Recs. Admin.*, 301 F. Supp. 3d 78, 89 n.11 (D.D.C.
2018) (citing *Wadhwa v. Dep't of Veterans Affs.*, 342 F. App'x 860, 862–63 (3d Cir. 2009), and *Taylor v. U.S. Treasury
Dep't*, 127 F.3d 470, 475 (5th Cir. 1997)) (emphasis in original).  Given the lack of clarity in binding precedent on
this issue, the non-exhausted Privacy Act claims will be dismissed for failure to state a claim.  *See Pretzman*, 2024
WL 3887384, at *15 n.6.

finding that "[a]lthough the 'see' reference issue was fully litigated in the District Court, we are not precluded from deciding the case on appeal on grounds of non-exhaustion"); *see also Anderson v. U.S. Dep't of State*, 661 F. Supp. 2d 6, 10 n.1 (D.D.C. 2009) (concluding that "[t]o the extent that the government is not raising an exhaustion-of-remedies defense with regard to the fee waiver, the Court may do so *sua sponte*" (quotation marks and citation omitted)); *Hinojosa v. Dep't of Treasury*, No. 06-cv-215 (JDB), 2006 WL 2927095, at *3 n.2 (D.D.C. Oct. 11, 2006) (same, as to "requests denied on the basis of statutory exemptions or lack of responsive documents" (citations omitted)).

Plaintiff does not dispute that he was advised of his appeal rights with respect to the INSCOM and Ft. Huachuca determinations but sought no administrative appeal. *See* Heaton Decl. ¶ 15 (stating, as to INSCOM, that plaintiff "was provided the requisite appeal rights" and had not "submitted an appeal to any of the INSCOM releases" as of the filing date of defendants' declaration in support of summary judgment, on October 18, 2023); Williams Decl. ¶ 7 (as to the Ft. Huachuca May 31, 2023 release, stating "[p]laintiff was informed of his rights to appeal" and "[n]o appeal was made"); *see also* Pl.'s Mem., Ex. C, June 2, 2023 TRADOC Release Ltr. at 7–8 (advising plaintiff of appeal rights); Pl.'s Mem., Ex. E, July 6, 2023 Ft. Huachuca Resp. at 12–13 (advising of appeal rights).[11]   Instead, plaintiff argues, as to the Ft. Huachuca request, that he constructively "exhausted his administrative remedies as of the time he filed his lawsuit on November 14, 2022" and "had no obligation to appeal Defendant's defective response" "once the case was in litigation."  Pl.'s Mem. at 8–9.  As to the INSCOM request, plaintiff argues that he

---

[11]     The third Ft. Huachuca release letter, issued on June 27, 2023, appears not to contain an appeal notice, *see* Pl.'s Mem., Ex. D, June 27, 2023 Ft. Huachuca Staff Judge Advocate Release Ltr. at 10, but plaintiff was informed of his right to appeal Ft. Huachuca's three other determinations and, as plaintiff does not dispute, filed no appeal notwithstanding such notice and the requirement that he "exhaust the administrative remedies established by an agency's Privacy Act regulations before bringing suit," *Mulhern v. Gates*, 525 F. Supp. 2d 174, 187 (D.D.C. 2007).

could not have "appeal[ed] a response that never came regarding a specific portion of a request." *Id.* at 23; *see also* Compl. ¶¶ 46, 51 (alleging plaintiff "exhausted all required and available administrative remedies" under the Privacy Act and FOIA).  Plaintiff's exhaustion argument is correct as to the Ft. Huachuca FOIA Request, but not as to the INSCOM FOIA Request or his Privacy Act claims, which plaintiff insists are incorporated into his two records requests.[12]

### a)   Ft. Huachuca FOIA Request

The record makes plain that defendants' response to the Ft. Huachuca FOIA request was made "only after Plaintiff filed suit" and thus plaintiff is correct that this timing "resulted in constructive exhaustion of administrative remedies," under the FOIA.  Pl.'s Mem. at 5; *see Rossotti*, 326 F.3d at 1310; *Oglesby*, 920 F.2d at 64–65.  Indeed, as defendants' Ft. Huachuca FOIA officer acknowledged, defendants did not begin to search for responsive records until mid-May 2023—roughly six months after plaintiff initiated this suit.  *See* Williams Decl. ¶ 6.  Plaintiff is accordingly "considered to have constructively exhausted administrative remedies," under the FOIA, on his Ft. Huachuca FOIA Request and is permitted to "seek judicial review immediately," *Rossotti*, 326 F.3d at 1310 (citing 5 U.S.C. § 552(a)(6)(c)), without having sought an administrative appeal of Ft. Huachuca's withholding determinations or the adequacy of this component's search for responsive records.

The same conclusion cannot be reached, however, with respect to plaintiff's Privacy Act claim, in Count I, which his briefing indicates is only directed at Ft. Huachuca's responses.  *See supra* note 8.  According to plaintiff,  Ft. Huachuca "violated the Privacy Act," Compl. ¶ 48, by "fail[ing] to provide a corresponding Privacy Act exemption" for withheld records "despite

---

[12]     Defendants dispute plaintiff's allegation that his requests to Ft. Huachuca and INSCOM were submitted under both the FOIA and Privacy Act.  Defs.' SMF ¶¶ 1, 3.  Given the dismissal of plaintiff's Privacy Act claim for failure to exhaust administrative remedies, *see supra* Part III.A.2.a, this factual dispute need not be resolved here.

Plaintiff's request falling under both FOIA and the Privacy Act." Pl.'s Mem. at 2; *see also* Compl. ¶¶ 42–48. In contrast to plaintiff's FOIA request to Ft. Huachuca, for which plaintiff constructively exhausted administrative remedies, *see supra*, "[t]he Privacy Act contains no equivalent to FOIA's constructive-exhaustion provision," *Barouch*, 962 F. Supp. 2d at 68 (quoting *Makuch v. F.B.I.*, No. 99-cv-1094 (RMU), 2000 WL 915640, at *4 (D.D.C. Jan. 5, 2000) (citing *Pollack v. Dep't of Just.*, 49 F.3d 115, 116 n.1 (4th Cir. 1995), and *Anderson v. U.S. Postal Serv.*, 7 F. Supp. 2d 583, 586 n.3 (E.D. Pa. 1998), *aff'd*, 187 F.3d 625 (3d Cir. 1999)). Indeed, unlike FOIA, "[t]here is no similar concept of constructive exhaustion in the Privacy Act[.]" *Trent v. U.S. Dep't of Homeland Sec.*, No. 18-cv-2591 (ABJ), 2020 WL 1429881, at *4 n.2 (D.D.C. Mar. 24, 2020) (citations omitted); *see also Pollack*, 49 F.3d at 116 n.1 (recognizing "the Privacy Act contains no equivalent to FOIA's 'constructive exhaustion' provision"); *Haleem v. U.S. Dep't of Def.*, No. 23-cv-1471 (JEB), 2024 WL 230289, at *6 (D.D.C. Jan. 22, 2024) ("[W]hile it is true that FOIA recognizes a constructive exhaustion doctrine for purposes of judicial review . . . the Privacy Act does not." (quotation marks and citations omitted)); *Kearns v. Fed. Aviation Admin.*, 312 F. Supp. 3d 97, 107 (D.D.C. 2018) (holding plaintiff's "claims regarding his November 2015 Privacy Act request are [] barred" for failure to exhaust administrative remedies, and reasoning that "[a]lthough [plaintiff] argues that he nonetheless 'constructively exhausted' his Privacy Act claims . . . the law is clear that such a route to exhaustion is not available under the statute" (citing *Barouch*, 962 F. Supp. 2d at 67–68, and *Mulhern v. Gates*, 525 F. Supp. 2d 174, 187 (D.D.C. 2007)).

Notwithstanding that Ft. Huachuca failed to "notify [plaintiff] of its determination and the reasons therefor within 20 business days of receiving the request"—or indeed at any time before plaintiff filed his suit, *Khine*, 943 F.3d at 964 (quotation marks and citation omitted)—and, further,

that Ft. Huachuca's post-Complaint responses do not appear to justify redactions or withholdings under the Privacy Act, plaintiff may not raise a Privacy Act challenge here "because he failed to first file an [administrative] appeal," *Barouch*, 962 F. Supp. 2d at 67–68 (citing *Mulhern*, 525 F. Supp. 2d at 183) (finding "[p]laintiff's claims challenging withholdings under the Privacy Act are barred because plaintiff failed to exhaust his administrative remedies with respect to those withholdings" by not appealing the agencies' initial determinations, even though agency actions "occurred after plaintiff had already filed the complaint in this action . . . because he failed to first file an [administrative] appeal" (citations omitted)).[13]

Given plaintiff's failure to exhaust administrative remedies, his Privacy Act claim in Count I must be dismissed.

### b) INSCOM FOIA Claim

As already noted, plaintiff challenges only the sufficiency of INCOM's response to his first category of requested records.  He does not dispute, however, that "[f]or each release" made between September 22 and November 8, 2022, *i.e.*, *before* his complaint was filed on November 14, 2022, *see* Heaton Decl. ¶¶ 7–15, "[p]laintiff was provided the requisite appeal rights" but "ha[d] not submitted an appeal to any of the INSCOM releases" prior to initiating this suit, *id.* ¶ 15.  This chronology triggered the administrative exhaustion requirement.  *See Magassa v. Transp. Sec. Admin.*, No. 22-5155, 2023 WL 8826564, at *3 (D.C. Cir. Dec. 21, 2023) (finding plaintiff's "failure to put [agency] on notice of his objections to the *Glomar* response, or to give the agency an opportunity to respond, precludes any belated judicial review of those contentions" (citation omitted)); *Khine*, 943 F.3d at 966 (recognizing that "if the 'agency responds to the [FOIA] request

---

[13]    Plaintiff alleges bad faith in Ft. Huachuca's purported "failure to process [plaintiff's] request under the Privacy Act."  Pl.'s Reply at 5.  Given this Court's dismissal of plaintiff's Privacy Act claim for failure to exhaust administrative remedies, the merits of plaintiff's bad-faith allegations need not be addressed.

after the twenty-day statutory window, but before the requester files suit' . . . 'the administrative exhaustion requirement still applies'" (citation omitted)).

To avoid the administrative exhaustion bar, plaintiff contends "there was never [] an adverse determination" on his first requested category of records, Pl.'s Mem. at 23, which sought "emails . . . referencing" search terms relating to plaintiff or plaintiff's command, INSCOM FOIA Request at 10, since defendants failed to adhere to plaintiff's "unequivocally stated" scope of the search, Pl.'s Reply at 7; *see also* Pl.'s Mem. at 23 (arguing "[p]laintiff cannot appeal a response that never came regarding a specific portion of a request").  To bolster this argument, plaintiff contends that defendants improperly interpreted plaintiff's counsel's email that he was "okay with [] excluding emails where soldier X was tasked with an action unrelated to SGT Mikhashov, or where SGT Mikhashov was CC'd on a product review," Reply at 7 (quoting Pl.'s Mem., Ex. H, at 103), and incorrectly construed this email exchange as plaintiff's "agree[ment] to modify the scope to only those emails related to his client's security clearance related concerns," Heaton Decl. ¶ 10; *see also* Pl.'s Mem. at 20 (plaintiff contending "INSCOM . . . misstated what Plaintiff and INSCOM had agreed to regarding limiting an existing request, which resulted in failing to produce, upon information and belief, hundreds of responsive records in the form of emails specifically requested by Plaintiff").  According to plaintiff, "without limiting the scope to just the security-related concerns," defendants "more than implied there would be a voluminous amount of emails, which would alone require 'rolling releases,'" and that plaintiff accordingly "reasonably believed" that defendants' November 2, 2022 response "could not possibly be Defendants' response to Plaintiff's initial request."  Pl.'s Mem. at 22.[14]  Plaintiff's asserted lack of awareness that defendants' November 2, 2022, response was an "adverse determination" regarding his first

---

[14]     The November 2, 2022 document relied upon by plaintiff is not in the record.

requested category for email records, Pl.'s Mem. at 23, is belied, however, by the fact that, with the November 2, 2022, release, "plaintiff was informed of his right to appeal [INSCOM's] decision and/or to seek mediation through the Office of Government Information Services," and that, as to each INSCOM release, plaintiff "was provided the requisite appeal rights" and "[t]o date . . . has not submitted an appeal to any of the INSCOM releases," Heaton Decl. ¶¶ 11, 15.  This record indicates that, despite notice of his opportunity to seek administrative redress of any misconstruction of his FOIA request, plaintiff opted to bypass that administrative process with the filing of this lawsuit.

Plaintiff also claims to have "specific facts showing that [] documents far beyond just the 30–40 pages [released on November 2, 2022] . . . existed," Pl.'s Mem. at 23, but this claim does nothing to excuse plaintiff's obligation to appeal the adverse determination set forth in INSCOM's November 2, 2022, release.  Indeed, accepting plaintiff's argument to the contrary would mean any FOIA requester could sidestep the statute's exhaustion mandate simply by challenging the adequacy of the search with the result of hollowing out FOIA's exhaustion provision and incentivizing plaintiffs to argue for overbroad interpretations of their record requests.  Plaintiff's effort to sidestep FOIA's exhaustion mandate is unsupportable.

Nevertheless, failure to exhaust is by no means an automatic bar to judicial review, for as noted, "courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing," *Oglesby*, 920 F.2d at 61 (citations omitted), while recognizing that "FOIA's administrative scheme 'favors treating failure to exhaust as a bar to judicial review,'" *Wilbur*, 355 F.3d at 677 (quoting *Hidalgo*, 344 F.3d at 1259)).  Neither party addresses these factors, but both are clearly met in this case. DoD regulations provide that "a FOIA requester has 90 days" to appeal an agency's determination.

*Haleem*, 2024 WL 230289, at *5 (citations omitted).  As noted, and as undisputed by plaintiff, he "was provided the requisite appeal rights" but "ha[d] not submitted an appeal to any of the INSCOM releases" prior to filing suit.  Heaton Decl. ¶ 15; *see, e.g.*, Compl., Ex. G at 25 (September 22, 2022 INSCOM release advising that plaintiff's "appeal must be postmarked no later than 90 calendar days from the date of [this] letter"); *id.*, Ex. R at 70 (November 8, 2022 INSCOM release advising the same); *see also id.* ¶¶ 15, 37.  Plaintiff simply opted not to comply with the agency's FOIA "administrative scheme."  *Wilbur*, 355 F.3d at 677 (citation omitted).

As to the second factor, "the purposes and policies underlying the exhaustion requirement" include "to prevent premature interference with agency processes, to give the parties and the courts benefit of the agency's experience and expertise and to compile an adequate record for review." *Wilbur*, 355 F.3d at 677 (citing *Hidalgo*, 344 F.3d at 1259).  Here, plaintiff's decision to file suit on November 14, 2022, just six days after the agency issued its final records release on November 8, 2022, runs flatly counter to these objectives, and precluded the agency from "consider[ing] the very issue[] that [plaintiff] has raised in court"—whether INSCOM conducted an adequate search. *Hidalgo*, 344 F.3d at 1259.

Taken together, dismissal of plaintiff's FOIA claim against INSCOM for failure to exhaust administrative remedies "is consistent with the purposes of exhaustion and FOIA's detailed administrative scheme."  *Porter v. C.I.A.*, 778 F. Supp. 2d 60, 68 (D.D.C. 2011) (finding FOIA requestor failed to exhaust administrative remedies as to "the timeframe of the search," where requestor "limited his appeal to the 'adequacy of the search' . . . which Defendant could reasonably infer covered only the methods, not the timeframe" and "[a]t no point during the appeal process . . . ever aver[red] that he was appealing the timeframe"); *see also Saleh v. Mayorkas*, No. 23-cv-409 (RCL), 2024 WL 3400261, at *3 (D.D.C. July 12, 2024) (dismissing FOIA claims for failure

to exhaust administrative remedies, in part where plaintiff "alleg[ed] that USCIS issued three FOIA denial letters and [] at least one letter suggest[ed] [plaintiff] file an appeal" but did not allege that he "filed any appeals" (citations omitted)); *Wine v. Dep't of the Interior*, No. 21-cv-3349 (TNM), 2022 WL 3715799, at *3–4 (D.D.C. Aug. 29, 2022) (granting agency's "motion for summary judgment on [plaintiff's] FOIA and Privacy Act claims" where although plaintiff "provides evidence that he filed an administrative appeal within a different agency . . . he does not show that he appealed within Interior" and "Interior submit[ted] a declaration from its FOIA and Privacy Act Appeals Officer that contradict[ed] [plaintiff's] unsubstantiated claims about exhaustion" (citation omitted)); *Gunter v. U.S. Secret Serv.*, No. 19-cv-353 (TFH), 2020 WL 570010, at *2 (D.D.C. Feb. 5, 2020) (dismissing suit since "Plaintiff offered no facts to show that he exhausted the required administrative remedies" (citations omitted)); *Landmark Legal Found. v. Dep't of Just.*, 211 F. Supp. 3d 311, 321–22 (D.D.C. 2016) (dismissing "alias email request claim against the Civil Rights Division because Plaintiff failed to appeal the division's response"); *Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 150–51 (D.D.C. 2010) (finding failure to exhaust administrative remedies with respect to two FOIA requests, where although plaintiff "complain[ed] to several offices within [Department of Transportation ('DOT')] and request[ed] mediation," "these efforts did not exhaust [plaintiff's] administrative remedies as they were not an appeal of the initial [agency] determination pursuant to DOT's FOIA regulations"), *aff'd*, No. 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010).[15]   Accordingly, plaintiff's claim, in Count II, as to the adequacy of INCOM's response to his INSCOM FOIA Request is dismissed, under

---

[15]    Given the conclusion that the administrative exhaustion doctrine precludes review of the merits of plaintiff's FOIA claim against INSCOM, plaintiff's allegation that INSCOM engaged in "bad faith" for having purportedly "misstated what Plaintiff and INSCOM had agreed to regarding limiting an existing request," which plaintiff contends "resulted in failing to produce, upon information and belief, hundreds of responsive records in the form of emails specifically requested by Plaintiff," Pl.'s Mem. at 20; *see also* Pl.'s Reply at 7–8, need not be addressed.

Federal Rule of Civil Procedure 12(b)(6), for failure to exhaust his administrative remedies.  *See*
*Hidalgo*, 344 F.3d at 1260 (finding that Rule 12(b)(6) dismissal is the appropriate procedural
vehicle for disposing of a case in which the plaintiff fails to exhaust administrative remedies).

**B.     Summary Judgment Is Granted As to Plaintiff's Ft. Huachuca FOIA Request**

Plaintiff next challenges defendants' invocation of FOIA Exemption 6 to justify the
redacting or withholding of records responsive to plaintiff's Ft. Huachuca request, contending that
defendants "improperly assert[ed] and overuse[d] FOIA exemption (b)(6)."  Pl.'s Mem. at 11.  For
the reasons set forth below, plaintiff's challenge to Ft. Huachuca's application of Exemption 6 is
rejected and, thus, defendants are entitled to summary judgment on this claim, while plaintiff's
cross motion for summary judgment is denied.

**1.     FOIA Exemption 6**

FOIA Exemption 6 authorizes an agency to withhold from disclosure certain "personnel
and medical files and similar files the disclosure of which would constitute a clearly unwarranted
invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The purpose of the exemption is "to protect
the privacy of individuals identified in certain agency records," *Am. C.L. Union v. U.S. Dep't of
Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011), by exempting "disclosures that would constitute an invasion
of privacy," *Reps. Comm. for Freedom of Press*, 489 U.S. at 756 (quotation marks omitted).

The Exemption 6 analysis proceeds in two steps.  First, a court determines whether the
records are "personnel," "medical," or "similar files."  5 U.S.C. § 552(b)(6).  The term "similar
files" is broadly construed and includes "detailed [g]overnment records on an individual which
can be identified as applying to that individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595,
602 (1982) (citations omitted); *see also Insider Inc. v. Gen. Servs. Admin.*, 92 F.4th 1131, 1135
(D.C. Cir. 2024) (recognizing that "'personnel . . . and similar files' under FOIA Exemption 6

includes bits of personal information, such as names and addresses, the release of which would create[] a palpable threat to privacy" (quotation marks omitted) (quoting *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152–53 (D.C. Cir. 2006))).

Second, a court evaluates "whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Telematch, Inc. v. U.S. Dep't of Agric.*, 45 F.4th 343, 351 (D.C. Cir. 2022) (citation omitted); *see also Morley v. C.I.A.*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) ("Exemption 6's requirement that disclosure be 'clearly unwarranted' instructs us to 'tilt the balance (of disclosure interests against privacy interests) in favor of disclosure.'" (citation omitted)). "If a substantial privacy interest is at stake, then the court must balance the individual's right of privacy against the public interest in disclosure." *Niskanen Ctr. v. FERC*, 20 F.4th 787, 791 (D.C. Cir. 2021) (quoting *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015)). "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (brackets and quotation marks omitted) (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth. ("FLRA")*, 510 U.S. 487, 497 (1994)); *see also Perioperative Servs. & Logistics, LLC v. U.S. Dep't of Veterans Affs.*, 57 F.4th 1061, 1068 (D.C. Cir. 2023) (similar). "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quotation marks omitted) (citing *Reps. Comm. For Freedom of Press*, 489 U.S. at 773).

### 2.     Ft. Huachuca's Exemption 6 Redactions

Plaintiff challenges Ft. Huachuca's withholding, under FOIA Exemption 6, of information from its May 31 and June 27, 2023, releases disclosing records responsive to plaintiff's fourth and

fifth requested categories for (4) "AR 15-6 Investigations and/or Commander's Inquiries, and/or any other administrative investigation regarding" plaintiff, and (5) "Military Police or CID Investigations regarding" plaintiff.  Pl.'s Mem. at 11, 14; *id.*, Ex. B, May 31, 2023 Ft. Huachuca Resp. Ltr. at 4–5; *id.*, Ex. D, June 27, 2023 Ft. Huachuca Off. of Staff Judge Advocate Release Ltr. at 10.[16]  While plaintiff concedes "that a proper (b)(6) exemption would include names, email addresses, and titles of junior military and DoD civilian personnel (to a certain extent)," Pl.'s Mem. at 16, he nonetheless challenges Ft. Huachuca's withholding of "handwritten statements . . . DoD civilian personnel and statements from witnesses and topics of dismissal not pertaining to [him]," and a "handwritten DA Form 2823 which was withheld in its entirety," *id.* at 11, 14 (quoting Williams Decl. ¶ 16) (rendering these items in bold, and asserting "Fort Huachuca and its [Office of the Staff Judge Advocate] improperly assert and overuse FOIA exemption (b)(6)").

No dispute is presented that the first prong for application of Exemption 6 is met here since the information withheld from Ft. Huachuca's May 31 and June, 27, 2023 releases falls within the scope of Exemption 6 as "personnel," "medical," or "similar files" under 5 U.S.C. § 552(b)(6); *see*

---

[16]     In an argument not pressed in reply, *see generally* Pl.'s Reply, plaintiff also asserts that "[d]efendants' failure to respond within the allotted time violates [his] rights under FOIA and Privacy Act," and that "the lack of timeliness alone entitles Plaintiff to prevail with his Partial Cross-Motion for Summary Judgment with the grant of attorneys' fees[.]" Pl.'s Mem. at 10–11 (citing 5 U.S.C. § 552(a)(4)(E)).  Certainly, "there may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention." *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777–78 (D.C. Cir. 2018) (quotation marks and citation omitted).  Yet, this is not a case in which plaintiff has, for example, "repeatedly been confronted with prolonged, unexplained delays by the same agency with regard to the same type of records[.]" *Id.* (recognizing that "informal agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a [FOIA] policy or practice claim").  Indeed, although Ft. Huachuca was initially "somewhat disorganized in their handling of [plaintiff's] request[]," *Bolze v. Exec. Off. for U.S. Att'ys*, No. 17-cv-2858 (FYP), 2021 WL 5564633, at *7 (D.D.C. Nov. 29, 2021), Ft. Huachuca corrected for its initially untimely response through prompt releases of multiple tranches of responsive records, *see id.* (rejecting claim that agencies acted in bad faith and recognizing that "[c]ourts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith" (alteration in original) (quoting *Skurow v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 319, 326 (D.D.C. 2012)).

         In any event, defendants are correct that "any reference to attorneys' fees at this stage in the case is completely premature," Defs.' Reply at 10—as plaintiff has conceded by failing to present any counterargument to this point on Reply, *see Leopold v. Manger*, 102 F.4th 491, 503 (D.C. Cir. 2024) (finding argument made in opposition "is conceded" where moving party did not present counterargument in reply brief (citations omitted)).

Pl.'s Mem. at 15–16; Pl.'s Reply at 2 (same).  Plaintiff challenges only defendants' application of

Exemption 6's balancing test, contending that "a substantial privacy interest" is not "at stake at all

other than for the withheld names and titles of personnel specifically redacted," Pl.'s Reply at 2,

and that any privacy interest in this information must in any event be "balance[d] . . . against

[plaintiff's] interest and the public interest in disclosure," Pl.'s Mem. at 15 (citations omitted),

with this balance weighing in favor of disclosure.  This argument is not persuasive, particularly

given the context here of plaintiff apparently trying to discover the names of persons who may

have provided information, on a confidential basis, in connection with an internal investigation of

whether his own conduct may not have complied with classified information protocols.

"The threshold requirement of a substantial privacy interest 'is not very demanding,'" and

the D.C. Circuit has "found a significant privacy interest whenever the information sought was of

a type that might invite unwanted intrusions[.]"  *Niskanen*, 20 F.4th at 791 (quoting *Multi Ag Media*

*LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008)).  Notably, "identifying information"

that, if disclosed, "would compromise a substantial . . . privacy interest," *Prison Legal News*, 787

F.3d at 1147–48 (citations omitted), "is not limited to names, social security numbers, and other

discrete pieces of information," *Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40, 47 (D.D.C. 2019)

(quoting See *Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*, 849 F. Supp. 2d 13, 30–

31 (D.D.C. 2012)).

The Ft. Huachuca declaration attests that "[d]isclosure of the personal identifying

information" withheld under Exemption 6—including witness statements obtained in the course

of internal military investigations—"would constitute a clearly unwarranted invasion of privacy

of third parties."  Williams Decl. ¶ 16.  Plaintiff contends, "[o]n information and belief," that "the

portions of Defendants' records that contain extensive redactions . . . would not reveal any specific

personal identifiers of individuals other than [plaintiff]," Pl.'s Mem. at 16, but plaintiff ignores that where, as here, disclosing identifying information "would allow those familiar with the events to readily identify the[] individuals" interviewed, "identifying information" may extend to include a witness's "knowledge about facts and events," *Horvath*, 419 F. Supp. 3d at 47 (citation omitted); *see, e.g.*, *Mountgordon v. U.S. Coast Guard*, 691 F. Supp. 3d 72, 90–91 (D.D.C. 2023) (observing "it is easy to imagine how releasing purely factual material from the witness interviews might reveal the identity of certain witnesses" (citing *Horvath*, 419 F. Supp. 3d at 48)).

On this basis, courts have upheld the withholding of information similar to that withheld by Ft. Huachuca here—witness statements pertaining to internal investigations—concluding that such information implicates a "privacy interest in the information being withheld." *Insider Inc.*, 92 F.4th at 1135; *see Horvath*, 419 F. Supp. 3d at 44, 48–49 (in suit "seeking records related to the Secret Service's internal investigation into [] complaint that [plaintiff] was subjected to workplace retaliation," upholding agency's withholding, under Exemption 6, of the "substance of any statements provided to investigators" that "would reveal the identity of the Secret Service agents who provided sworn statements or were interviewed as part of the investigation" and thus implicate "substantial privacy interests" (quotation marks and citations omitted)); *N.Y. Times Co. v. F.B.I.*, No. 21-cv-10888 (NRB), 2023 WL 5955843, at *3, *6–7 (S.D.N.Y. Sept. 13, 2023) (concluding information "within [FBI Office of Professional Responsibility] Precedent Reports," which summarize "previous reviews of possible misconduct by FBI personal . . . resulting in disciplinary actions," was properly redacted, where FBI "believes [such information] could identify the FBI officers who are the subjects of the report, as well as third parties, even if their names were not included" (citations omitted)); *accord Rose*, 425 U.S. at 355, 376–77 (concluding "case summaries of honor and ethics hearings" at Air Force academy are "similar files" under Exemption 6 and may

be subject to withholding under Exemption 6); *Scarlett v. Off. of Inspector Gen.*, No. 21-cv-819 (RDM), 2023 WL 2682259, at *1, *10 (D.D.C. Mar. 29, 2023) (in FOIA suit alleging failure to disclose complaint filed against plaintiff or her company, recognizing that "if the body of the [OIG] complaint includes information that might identify the complainant, third-party witnesses, or OIG employees, that information would likely fall within the scope of Exemption 6").

These cases carry persuasive weight here. Plaintiff's fourth and fifth record requests to Ft. Huachuca sought the release of confidential investigations regarding plaintiff relating to the "suspension of [plaintiff's] security clearance for classified information," Ft. Huachuca FOIA Request at 2 (capitalization omitted), and the June 27, 2023 release objected-to by plaintiff indicates the information withheld pursuant to Exemption 6 includes statements obtained from individuals in the course of such confidential investigations, *see* Pl.'s Mem., Ex. F, June 27, 2023 Ft. Huachuca Staff Judge Advocate Release at 15–76, ECF No. 21-2. "[T]he witnesses involved in the[se] investigation[s]" plainly "have a substantial privacy interest in the non-disclosure of their identifying information." *Horvath*, 419 F. Supp. 3d at 47 (citation omitted).

Plaintiff points to eleven pages from the June 27, 2023 release that he contends represent "some of the seemingly more obvious abuses of (b)(6)." Pl.'s Mem. at 17 (citing "pages 4, 13, 17, 18, 22, 27, 35, 36, 39, 42, and 43"); *see* Ex. F, June 27, 2023 Ft. Huachuca Staff Judge Advocate Release at 15–76. Certain of the cited pages contain statements in response to question prompts, with "multi-line answer[s] . . . entirely redacted." Pl.'s Mem. at 17. Yet, even a cursory review of these pages clarifies that many of the redactions appears on pages where plaintiff is referenced and discussed—indicating that those interviewed knew plaintiff and could be "easily identifiable from the details contained in the withheld information." *Horvath*, 419 F. Supp. 3d at 48 (citation omitted).

As to the remaining pages, plaintiff's name is not even referenced, which fact is consistent with the Ft. Huachuca declaration attesting that certain withheld information challenged by plaintiff consists substantially of records "pertaining to other individuals, *not [plaintiff]*." Williams Decl. ¶ 16 (emphasis supplied).   Plaintiff baldly asserts that these records constitute "relevant document[s]," Pl.'s Mem. at 16, and that "the information being withheld is not simply names on a list or personal, private, or medical information about anyone other than" plaintiff, *id.* at 12, but given that the withheld information is described as "not pertaining to [plaintiff]," Williams Decl. ¶ 16, the information would neither be responsive nor relevant to plaintiff's request for records of investigations related to *him*, *see* Ft. Huachuca FOIA Request at 2.   Particularly given the lack of any apparent relevance of the redacted statements to plaintiff's records request, Ft. Huachuca reasonably concluded that the disclosure of "handwritten statements . . . not pertaining to [plaintiff]" and similar records, Williams Decl. ¶ 16, "would constitute a clearly unwarranted invasion of personal privacy" of the individuals who supplied the statements at issue, 5 U.S.C. § 552(b)(6).[17]

"Finding more than a minimal privacy interest, we turn to the public interest in disclosure." *Niskanen Ctr.*, 20 F.4th at 792.   Plaintiff contends that "disclosure of the records containing the reason(s) for which [plaintiff] is having his ability to hold a security clearance questioned" serves a public interest of "shed[ding] light on whether the agency would be suspending or revoking

---

[17]       Some of plaintiff's confusion or suspicion may have been averted had Ft. Huachuca submitted a *Vaughn* index "explain[ing] the rationale behind each redaction in the materials," *Kearns*, 312 F. Supp. 3d at 111–12 (citations omitted) ("grant[ing] summary judgment for Defendant with respect to the agency's withholdings under Exemption 6"), or provided a more granular explanation in its declaration regarding the information withheld.   Yet, as this Circuit has recognized, "requiring too much detail in a declaration could defeat the point of the exemption" and perhaps "risk the disclosure of the very information that the [agency] was attempting to protect," *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 31 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) (brackets omitted) (citing *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1385 (D.C. Cir. 1979)), and here, the Ft. Huachuca declaration sets forth sufficient information to conclude that disclosure of the redacted information "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6).

[plaintiff's] clearance for a permissible reason within the scope of Defendants' authority, or for an impermissible reason outside the scope of its authority." Pl.'s Mem. at 15. While crediting some level of public interest in understanding how defendants conduct investigations regarding a servicemember's security clearance, plaintiff "offers nothing but speculation to suggest that" defendants have acted impermissibly in its investigation. *Perioperative Servs. & Logistics, LLC*, 57 F.4th at 1068 (concluding "substantial privacy interest outweighs any public interest in disclosure" where although "[k]nowing how the VA handles complaints from competitors certainly qualifies as a public interest" plaintiff "offers nothing but speculation to suggest that a competitor filed the complaint against it"). At the same time, the public has a strong interest in preserving the confidentiality of internal investigations as necessary to encourage forthcoming interviews with witnesses and ensure the integrity of the fact gathering process, both of which considerations may depend in part on assurances to those participating that their names and other identifying information will be kept confidential. This strong countervailing public interest dovetails with the significant privacy interests to warrant withholding under Exemption 6.

To be sure, plaintiff believes that disclosure is "absolutely paramount" to "his current military career and future government-related career prospects." Pl.'s Mem. at 1. This, however, reflects his own *private* interest in disclosure of the records at issue and is an insufficient basis to override the significant privacy and public interests in withholding. This interest plainly does not "serve FOIA's raison d'être of contribut[ing] significantly to public understanding of the operations or activities of the government." *Magassa*, 2023 WL 8826564, at *2 (alteration in original; quotation marks omitted) (quoting *FLRA*, 510 U.S. at 495). Given plaintiff's failure to articulate any cognizable public interest, this Court "need not linger over the balance." *Beck*, 997 F.3d at 1494 (citations omitted); *see also Taitz v. Astrue*, No. 11-5304, 2012 WL 1930959, at *1

(D.C. Cir. May 25, 2012) (per curiam) (concluding plaintiff "has not demonstrated any valid public interest in disclosure to balance against the substantial privacy interest at stake" and recognizing "[i]f there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time'" (quoting *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005))).

### 3.   Segregability

Under FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt" from disclosure.  5 U.S.C. § 552(b).  Producing segregable information is essential for an agency's FOIA compliance, and "district courts cannot approve withholding exempt documents 'without making an express finding on segregability.'"  *Machado Amadis*, 971 F.3d at 371 (citation omitted); *see also Porup v. C.I.A.*, 997 F.3d 1224, 1238–39 (D.C. Cir. 2021) (recognizing this principle but "exercis[ing] [] discretion to make such a determination in the first instance" "rather than remanding solely for the District Court to pass upon segregability").  In evaluating segregability, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman*, 494 F.3d at 1117 (citation omitted); *see also Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051, 1057–58 (D.C. Cir. 2023).  "To rebut[] this presumption, the requester must offer, at least, evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation."  *Flyers Rts. Educ. Fund, Inc.*, 71 F.4th at 1058 (alteration in original; quotation marks and citation omitted).  Even under that presumption, "the agency must provide a 'detailed justification' for [the exempt material's] non-segregability," but need not "provide so much detail that the exempt material would be effectively disclosed."  *Johnson v.*

*Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).

Plaintiff contends that Ft. Huachuca's "[withholding] in its entirety" of the "handwritten DA Form 2823," Pl.'s Mem. at 16 (quoting Williams Decl. ¶ 16), indicates "a substantial likelihood that Defendants could not possibly adhere to the 'reasonable segregation' obligation," *id.* at 16–17, 21 (citing 5 U.S.C. § 552(b), and *PHE, Inc. v. Dep't of Just.*, 983 F.2d 248, 252 (D.C. Cir. 1993)) (asserting Ft. Huachuca's "statement regarding segregability is, clearly, conclusory"); *see also* Pl.'s Reply at 3–5.  Yet, unlike in the case cited by plaintiff, where the agency did not "address[] whether any of the withheld information could be segregated from exempt information and released," *PHE, Inc.*, 983 F.2d at 252, the Ft. Huachuca declaration attests, based on a "page-by-page and line-by-line" review of "all the documents recommended for release or that [Ms. Williams] had authority to release," that "all non-exempted portions of the records and information in question were released to the Plaintiff" and that "[n]o other meaningful information in the documents could be discerned without disclosing information warranting protection under the law."  Williams Decl. ¶ 20.  "Those sworn statements sufficiently establish that no portions of the withheld documents may be segregated and released."  *Porup*, 997 F.3d at 1239 (quotation marks and citations omitted) (finding agency "carried its burden in demonstrating that it released all segregable portions of the responsive documents" where agency declarant "attested that the Agency had 'conducted a page-by-page and line-by-line review, and released all reasonably segregable, non-exempt information' within responsive records" and declarant "determined that no additional information may be released without divulging information that . . . falls within the scope of one or more FOIA exemptions" (citations omitted)).

Plaintiff counters that the "presumption that [Ft. Huachuca] complied with their [segregability] obligation" is rebutted, Pl.'s Reply at 3–5 (citing *Sussman*, 494 F.3d at 1117), based on the eleven pages from the June 27, 2023, release that plaintiff cited as representing "some of the seemingly more obvious abuses of (b)(6)," Pl.'s Mem. at 17, and based on the "totality of the circumstances" demonstrating defendants' asserted "ineptitude" with respect to plaintiff's Ft. Huachuca request, Pl.'s Reply at 4–5.  As discussed, *supra*, in Part III.B.2, however, the cited pages from the June 27, 2023, release do not reflect improper withholding under Exemption 6, and this withholding thus does not rebut the presumption that Ft. Huachuca complied with its segregability obligations; *see, e.g.*, *Flyers Rts. Educ. Fund, Inc.*, 71 F.4th at 1058 (finding plaintiff's "unsubstantiated assertions" that defendant failed to comply with its segregability obligations "fail to rebut the presumption" of compliance (citing *Sussman*, 494 F.3d at 1117)).

Defendants' motion for summary judgment with respect to plaintiff's FOIA claim against Ft. Huachuca is, accordingly, granted and plaintiff's cross motion for summary judgment on this claim is denied.[18]

---

[18]      Plaintiff accuses Ft. Huachuca for "act[ing] in bad faith," citing Ft. Huachuca's alleged "lack of logical use (and overuse) of exemptions . . . and the deficient, conclusory 'explanation' within their supporting affidavit," and seeks a finding that defendants "conceded" these arguments by "not address[ing]" these "allegations of bad faith" and the remedy either of the "immediate release . . . of the records or . . . an *in camera* review[.]"  Pl.'s Reply at 5–6 (citation omitted).  This claim that the government acted in bad faith is meritless.  As explained *supra* in Part III.B.2, Ft. Huachuca properly applied Exemption 6, and plaintiff has provided no evidence of bad faith, other than conclusory accusations to rebut the presumption of good faith as to Ft. Huachuca's sworn agency declaration."  *See Fischer v. U.S. Dep't Just.*, 723 F. Supp. 2d 104, 109 (D.D.C. 2010) ("reject[ing] plaintiff's arguments that defendant's failure to produce documents until after . . . litigation commenced, evinces bad faith or an inadequate search").

        Furthermore, no *in camera* review is warranted here.  "*In camera* inspection may be appropriate . . . when agency affidavits are insufficiently detailed to permit meaningful review of exemption claims, and when evidence of agency bad faith is before the court." *Lam Lek Chong v. U.S. Drug Enf't Admin.*, 929 F.2d 729, 735 (D.C. Cir. 1991) (citation omitted).  As discussed above, plaintiff has proffered simply no "evidence of agency bad faith," *id.*, and as the D.C. Circuit has explained, "*in camera* review is generally disfavored," *PHE*, 983 F.2d at 253.  It is "not a substitute for the government's obligation to justify its withholding in publicly available and debatable documents," *id.* (quotation marks and citation omitted), and "should not be resorted to as a matter of course, simply on a theory that 'it can't hurt,'" *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998) (citations omitted).  Considering this well-settled precedent, this Court exercises its "broad discretion" to decline *in camera* review here.  *Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 713 (D.C. Cir. 2022) (citation omitted).

### C.      Counts III and IV Are Dismissed

Tacked onto plaintiff's FOIA and Privacy Act claims are two overlapping claims, in Counts III and IV, alleging that defendant DCSA "unequal[ly] enforce[d] [] SEAD 4," an executive branch "directive . . . guiding the issuance of security clearance," against him, Compl. ¶ 56 (Count III) (capitalization omitted), by "consistently attempt[ing] to circumvent Plaintiff's [UCMJ] Article 31(b) rights" and "ask[ing] poorly worded, vague questions based upon vague allegations," which "repeated attempts" bore "an uncanny resemblance to McCarthyism since Plaintiff is ethnically Russian," *id.* ¶¶ 58, 60. This alleged "unequal application of SEAD 4 and other violations of applicable laws, regulations, and/or policies," *id.* ¶ 64 (Count IV), by unnamed "John Does 1–10 and the federal government" are claimed to violate his "constitutional rights; [and] denied [him] due process," *id.* Defendants seek dismissal of these two counts, *see* Defs.' Mem. at 16–18, arguing that "Count III fails for lack of subject matter jurisdiction because sovereign immunity bars the claim," Defs.' Mem. at 16 (citing FED. R. CIV. P. 12(b)(1)), and that plaintiff's "conclusory statements in Count IV are insufficient to meet his burden in establishing personal jurisdiction or to state a claim," *id.* at 18. This Court agrees.

Conceding that Count III "is not the model of clarity," Pl.'s Mem. at 25, plaintiff nevertheless contends that "[w]ithout outright stating as much, Plaintiff's claim is brought under the Equal Protection Clause under the Fifth Amendment" with "[n]ational origin" the suspect classification, since plaintiff "alleged that Defendants engaged in unequal enforcement of SEAD 4 due to, at least in part, Plaintiff's nationality," Pl.'s Mem. at 25 (citations omitted), and that "Count III also raises an APA claim," *id.* at 27. As defendants correctly point out, however, "the words 'national origin' and 'Equal Protection' appear nowhere in the actual complaint," Defs.' Reply at 7, nor does the Complaint "mention the APA or 5 U.S.C. § 702," *id.* The law is well settled that "a complaint may not be amended by the briefs in opposition to a motion to dismiss."

*Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020) (citation omitted).  That is precisely what plaintiff attempts to do here: raise Fifth Amendment Equal Protection Clause and APA claims "for the first time in its opposition brief to defendants' motion to dismiss." *Id.*  This attempt must fail.  "To hold otherwise would mean that a party could unilaterally amend a complaint at will," *id*. (citation omitted), with the obvious consequences of undercutting the purpose of procedural rules to provide adequate notice about claims, *see* FED. R. CIV. P. 8(a), and the overarching purposes of these rules "to secure the just, speedy, and inexpensive determination of every action," FED. R. CIV. P. 1.

In Count III's current form, defendants are correct that "sovereign immunity bars the claim." Defs.' Mem. at 16 (citing FED. R. CIV. P. 12(b)(1)).  This vague, at best, claim does not "fall within a valid waiver of sovereign immunity[.]"  *Sierra Club v. Wheeler*, 956 F.3d 612, 616, 619 (D.C. Cir. 2020) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994)) (affirming dismissal of claims against EPA Administrator upon concluding claims do not "fall within a valid waiver of sovereign immunity"); *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." (quoting *F.D.I.C.*, 510 U.S. at 475)); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 387 F. Supp. 3d 33, 54 (D.D.C. 2019) (dismissing claim where "[p]laintiffs attempt to recharacterize their claim by suggesting that the amended complaint's reference to DHS's inadequate records management program was really a reference to DHS's inadequate *recordkeeping guidelines and directives*," but "the amended complaint never mentions DHS's recordkeeping guidelines or directives" (emphasis in original) (citations omitted)), *amended*, No. 18-cv-2473 (RC), 2019 WL 11307644 (D.D.C. July 22, 2019); *Strumsky v. Wash. Post Co.*, 922 F. Supp. 2d 96, 100–01 (D.D.C. 2013) (affirming dismissal of common law claims where, although plaintiff "may have

suggested that his claims could be brought under ERISA, he … failed to provide sufficient detail regarding how he could successfully state such a claim").

As to Count IV, plaintiff waits until his opposition to add allegations not pleaded in his Complaint, contending that he has "adequately pleaded that the John Does are employees of the Department of Defense and/or DCSA" and that "individual John Does are those involved in contacting and requesting military leaders to violate [plaintiff's] rights[] and the timeframe of when this occurred is known," and asserting that "[i]t is reasonably likely that even limited discovery would enable Plaintiff to unveil the identities of the individuals who committed the alleged misconduct." Pl.'s Mem. at 28. "[T]reat[ing] the complaint's factual allegations as true, and . . . grant[ing] [] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023) (citation omitted), this claim still fails to allege "the manner in which [the unnamed John Does] violated Plaintiff's rights," "how the[] alleged violations of Plaintiff's Article 31(b) rights translate into a colorable claim under the law . . . and whether or not there is personal jurisdiction over" the John Does, Defs.' Reply at 8–9. In sum, Count IV, as pleaded, fails to state a claim.

## IV.    CONCLUSION

For the reasons stated, defendants' motion is granted.  Specifically, defendants are entitled to summary judgment on plaintiff's FOIA claim, in Count II, against Ft. Huachuca; to dismissal, for failure to state a claim, pursuant Federal Rule of Civil Procedure 12(b)(6), as to plaintiff's FOIA claim against INSCOM in Count II, any Privacy Act claim in Count I, and Count IV; and, finally, to dismissal for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), as to Count III.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  September 26, 2024

_____
**BERYL A. HOWELL**
United States District Judge